UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| AMSCOT CORPORATION, | / |
| a Florida Corporation, | / |
| Plaintiff, | / |
| | / |
| v. | / |
| | /  Case No.:8:04-CV-2230-T27-EAJ |
| BEEPERS & PHONES OF TRI- | / |
| COUNTY, INC., BEEPERS & | / |
| PHONES OF BRANDON, INC., | / |
| BEEPERS & PHONES OF | / |
| ALTAMONTE SPRINGS, INC. | / |
| Florida Corporations, and | / |
| RON POWNALL, an individual, | / |
| | / |
| Defendants. | / |

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Fed. R. Civ. P. 65 and M.D. Fla. Local Rules 3.01(a) and 4.06, Plaintiff AMSCOT CORPORATION, (hereinafter referred to as "AMSCOT") by and through its undersigned attorneys, moves for a preliminary injunction enjoining BEEPERS & PHONES OF TRI-COUNTY, INC., BEEPERS & PHONES OF BRANDON, INC., BEEPERS & PHONES OF ALTAMONTE SPRINGS, INC. and RON POWNALL (hereinafter collectively referred to as "BNP") from infringing upon AMSCOT's trademarks. In support of this motion, AMSCOT states as follows.

1. The present motion seeks to enjoin BNP's flagrant and intentional infringement AMSCOT's valuable trademark rights.

2. AMSCOT owns common law trademark rights in a logo consisting of a blue background and a yellow rising sun (hereinafter referred to as the "Rising Sun Logo"). AMSCOT uses its Rising Sun Logo alone and as the backdrop for its registered AMSCOT® mark in advertising and on the awnings of its storefronts.

3. BNP recently began use of an <u>identical</u> yellow and blue rising sun logo (hereinafter referred to as the "Accused Logo") as the backdrop for its BEEPERS 'N PHONE mark. BNP's adoption of AMSCOT'S logo is especially egregious because BNP employs the logo on awnings that are the same style as those used by AMSCOT. BNP's infringing activity is worsened even further by its adoption of a script-type font for its BEEPERS 'N PHONE mark that is strikingly similar to the script-type font used for the AMSCOT® mark. As a result of BNP's tactics, its storefronts have become nearly indistinguishable from AMSCOT's.

4. Consumer confusion will inevitably result because both parties are involved in the sale of pre-paid cellular telephone service and otherwise cater to similar clientele.

5. As more fully outlined in the incorporated memorandum, AMSCOT respectfully requests preliminary injunctive relief to put an end to BNP's continued infringement of AMSCOT's trademarks.[1]

---

[1] Immediately after filing its complaint, AMSCOT entered into settlement negotiations with BNP, which at the time was unrepresented by counsel, in an effort to settle the present dispute. Unfortunately, the parties were unable to resolve their differences. This motion follows the break down in settlement negotiations between the parties.

# MEMORANDUM OF LAW

I. BACKGROUND

Established in 1989, AMSCOT is a financial services company headquartered in Tampa, Florida. By way of its stores throughout central Florida, AMSCOT provides consumers with a wide variety of services, such as tax services, check cashing, deferred deposit transactions, money orders and pre-paid cellular telephone service. See Declaration of Joseph Monaco at ¶ 3. Many of these stores having awnings featuring AMSCOT's Rising Sun Logo as the backdrop for the AMSCOT® mark. See id. at ¶ 20. AMSCOT is the owner of Federal Trademark Reg. 2,889,003 for AMSCOT® as used in conjunction with financial services. See id. at ¶ 12. AMSCOT has also applied for a federal registration (Ser. No.78/482,410) for the Rising Sun Logo as used in conjunction with financial services. See id. at ¶ 14. AMSCOT has used the Rising Sun Logo continuously in this district since at least as early as October 10, 2002. See id. at ¶ 15. The Rising Sun Logo is widely used in AMSCOT's advertising and has been universally incorporated into its corporate theme. See id. at ¶ 22.

On information and belief, BNP is headquartered in St. Petersburg, Florida and sells cellular telephones, beepers and cellular telephone services from stores throughout the Tampa Bay area. Many of these stores now employ the Accused Logo on storefront awnings. See id. at ¶¶ 32-34. BNP offers pre-paid cellular telephone service at its stores. See id. at ¶ 30.

## II. LEGAL STANDARD

"To support a preliminary injunction, a district court need not find that the evidence positively guarantees a final verdict in plaintiff's favor." Levi Strauss & Co.v. Sunrise Int'l Trading, Inc., 51 F.3d 982, 985 (11th Cir. 1995). Rather, it must determine whether the evidence establishes the following four elements:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction were not granted, (3) that the threatened injury to the plaintiff outweighs the harm an injunction may cause the defendant, and (4) that granting the injunction would not disserve the public interest.

Id.; Davidoff & CIE, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1300 (11th Cir. 2001).

## III. ARGUMENT

### A. AMSCOT Has a Substantial Likelihood of Success on Its Unfair Competition and Trademark Infringement Claims.

To prevail on its claims for federal and state unfair competition (Count I) and common law trademark infringement (Count II), AMSCOT must show that: 1) it has rights in the subject trademark; and 2) that BNP is using a mark in commerce without AMSCOT's consent that is likely to deceive, cause confusion or result in a mistake. See Davidoff, 263 F.3d at 1301; McDonald's Corp. v. Robertson, 147 F.3d 1301, 1307 (11th Cir. 1998).

#### 1. AMSCOT'S Rights in the Rising Sun Logo Are Undisputed.

AMSCOT's exclusive ownership of the Rising Sun Logo is undisputed. For over two years now, AMSCOT has been exclusively and continually using the logo to advertise the full range of services provided at AMSCOT branches throughout

central Florida. See Monaco Dec. at ¶¶ 15-18. As a result of this continued use, AMSCOT has developed common law trademark rights in the Rising Sun Logo. See Tally Ho Inc. v. Coast Comm. College Dist., 889 F.2d 1018, 1025-26 (11th Cir. 1990)(common law rights are appropriated through actual prior use in commerce). Consumers throughout central Florida now associate the Rising Sun Logo with AMSCOT and the services it provides. Having established its ownership of the mark, AMSCOT need only demonstrate that use of the Accused Logo is likely to cause consumer confusion.

### 2. BNP's Logo Is Likely Causing Confusion in the Marketplace.

The Eleventh Circuit has devised a seven factor test to determine whether there is a likelihood of confusion between two marks. These factors include: 1) the type of mark being asserted (i.e. how strong it is); 2) the similarity of the marks; 3) the similarity of the products the marks represent; 4) the similarity of the parties' retail outlets and customers; 5) the similarity of advertising media used; 6) the defendant's intent; and 7) actual confusion. See Frehling Enter. Inc. v. Int'l Select Group, Inc., 192 F.3d 1330, 1335 (11th Cir. 1999); Lone Star Steakhouse & Saloon Inc. v. Longhorn Steaks, Inc., 122 F.3d 1379, 1382 (11th Cir. 1997).

#### a. AMSCOT's Rising Sun Logo Is a Strong Mark.

The first factor considers the type of trademark being asserted. A trademark is any mark, symbol, logo or design that is used as a means of establishing good will and reputation and in describing, identifying or denominating particular goods or services. See Tally-Ho, 889 F.2d at 1026. In the present case, AMSCOT's Rising

Sun Logo is a strong and arbitrary mark because it bears no relationship to the services being offered (i.e. a rising sun has nothing to do with financial services). See Frehling Ent., 192 F.3d at 1335 (noting that "Sun Bank" is arbitrary when applied to banking services).

Arbitrary marks such as the Rising Sun Logo are inherently distinctive, instantly function as trademarks, and are the strongest of any type of trademark. See id. at 1336 (arbitrary marks are the strongest of four categories); see also Tally-Ho, 889 F.2d at 1026 (noting that arbitrary marks are inherently distinctive). The Rising Sun Logo is strengthened even further by the fact that it has been widely used and advertised by AMSCOT for over two years. See Monaco Dec. at ¶ 15. AMSCOT has budgeted over $3,000,000 in advertising using the Rising Sun Logo for the current fiscal year, and it spent over $2,000,000 in the prior fiscal year. See id. at ¶¶ 26-27. AMSCOT also spent millions of dollars in 2002 and 2003. See id. The strength of the Rising Sun Logo means that it must be afforded a great deal of protection. This factor weighs strongly in AMSCOT's favor.

### b. The Subject Marks Are Identical.

The second factor compares the subject marks and considers the overall impression left by the marks. See Frehling, 192 F.3d at 1337. As part of this analysis, one must consider the sound, appearance, and manner in which the marks are used. See id. Here, neither prose nor legal analysis can adequately convey the stunning side-by-side comparison of the marks. See Monaco Dec. at ¶ 33. Unfortunately, this side-by-side comparison is all too easily made insomuch as

AMSCOT and BNP stores are frequently located adjacent one another. See id. at ¶¶ 33-34.

As even a casual review reveals, BNP's Accused Logo is <u>identical</u> to AMSCOT's Rising Sun Logo. Yet, BNP's use of an identical logo is exacerbated by other factors. First, BNP's Accused Logo employs the same colors as those displayed in the Rising Sun Logo. As noted by AMSCOT's trademark application, the sun portion of the mark is bright yellow and the sky is represented by a sultan blue. See Monaco Dec. at ¶ 14. These are the same colors used in the Accused Logo. See id. at ¶ 32. Second, both logos are also used as backdrops for word marks that are written in a script-like printing. See id. at ¶ 33. That is, the logos serve as the background for the AMSCOT and BEEPERS 'N PHONES marks, each of which is written in a font type that simulates handwriting. Third, the logos and associated word marks are used on the very same type of storefront awnings (that is bullnose wrap around awnings). See id. The overall impression created in the mind of the consuming public is that BNP and AMSCOT are somehow affiliated with one another. However, no such affiliation exists. This factor weighs heavily in AMSCOT's favor.

   **c.   Both AMSCOT and BNP Sell Prepaid Phone Services.**

The third factor examines the similarity of the products represented by the subject marks. This factor again weighs in AMSCOT's favor because both AMSCOT and BNP sell <u>identical</u> prepaid cellular telephone services. See id. at ¶ 30. These services are offered on behalf of many of the nation's largest telephone companies,

-7-

such as T-Mobile®, Verizon® and AT&T® and allow customers to purchase "airtime" for cellular telephones on an as-needed basis. The advantage of this service is that no sales contract is involved, the customer is not obligated to make any monthly payments, and no credit check is involved.

Customers wishing to purchase pre-paid cellular service have a choice between BNP and AMSCOT. Confusion will most certainly result (and probably has already occurred) when consumers are confronted by the near identical nature of the awnings used by BNP and AMSCOT and the striking similarities between the Accused and Rising Sun Logos. This confusion is only compounded by the frequent proximity of BNP and AMSCOT stores. See id. at ¶¶ 33-34.

When confronted with this evidence, BNP will undoubtedly attempt to mitigate its actions by pointing out that not all of the services offered by AMSCOT are offered by BNP (and vice versa). However, hornbook trademark law establishes that there need not be a complete overlap of goods and services in order for infringement to exist. See Safeway Stores, Inc. v. Safeway Discount Drugs Inc., 675 F.2d 1160, 1166 (11th Cir. 1982)(noting that there was sufficient overlap between plaintiff's grocery goods and defendant's non-grocery goods to warrant injunctive relief). Additionally, Eleventh Circuit precedent unmistakably holds that a trademark owner's rights are not limited to the specific goods and services being sold, but extend to any goods or services that are related in the minds of consumers. See E. Remy Martin & Co., v. Shaw-Ross Int'l., 756 F.2d 1525, 1530 (11th Cir.

1985). Here, goods or services are "related" if the consuming public likely believes that a single producer puts out both goods or services. See id.

In sum, this factor decidedly tips in AMSCOT's favor, because both parties sell prepaid phone services and because, as discussed more fully below, consumers will likely view the parties respective services as coming from a single source.

### d. Both AMSCOT and BNP Cater to the Self-banked.

The fourth factor considers the similarity of the parties' retail outlets and customers. AMSCOT is an alternative financial services company that serves many "self-banked" customers. See Monaco Dec. at ¶ 6. These are individuals who, for one reason or another, cannot obtain, or do not want, an established bank account. AMSCOT and companies like it occupy a special place in the financial services industry by providing services to individuals who are overlooked by conventional banks. As noted in Any Kind Checks v. Talcott, 830 So. 2d 160, 166 (4th DCA 2002), alternative financial services companies have become major service provides for low-income and working poor consumers, residents of minority neighborhoods, and people with blemished credit histories. Accordingly, these companies are often located in lower income neighborhoods.

Self-banked financial services and pre-paid telephone services are natural compliments to one another. In the same way unbanked customers do not have an established bank account, users of pre-paid phone services do not have an established account for phone service. Rather, users of pre-paid phone services pay for cellular phone service on an as-needed basis. By doing so, they eliminate the need for service contracts, monthly invoices and, perhaps most importantly, credit

checks. It is quite likely that these types of customers will also avoid traditional banking institutions in favor of companies like AMSCOT.

Thus, there is a substantial overlap between the customers of AMSCOT and BNP. It is likely that BNP's customers have, at one time or another, utilized the financial services of AMSCOT. Likewise, AMSCOT's customers have probably used the services of BNP. The similarity of the customer base is reflected in the parties' advertising campaigns: BNP widely advertises free phones, whereas AMSCOT widely advertises free money orders. See Monaco Dec. at Exs. 15, 17. The overlapping customer base and the complimentary nature of the services being offered, means that the parties' services will be viewed by consumers as coming from a single source.

The overlapping customer base and the relatedness of the services offered, makes BNP's selection of a near identical logo all the more damaging and suspicious. Additionally, the fact that BNP and AMSCOT both sell pre-paid phone services and have stores that are located in the same neighborhoods makes confusion almost inevitable.

### e. The Subject Marks Are Both Employed on Similar Store Awnings.

The fifth factor considers the similarity of the advertising media used. Here, both BNP and AMSCOT employ the subject marks on outdoor awnings. See Monaco Dec. at ¶¶ 32-33. These awnings have an identical construction and appearance that only adds to the overall similarity of the marks. Namely, both awnings have a rectangular configuration and have a depth that juts out over the

store's entryway. Both AMSCOT's Rising Sun Logo and BNP's Accused Logo are spread out over the entire length of the awning. The resulting appearance of the awnings is so similar that, when the stores are located adjacent one another, it is difficult to determine where one store ends and the other begins! See id. at ¶ 33. This similarity is not a coincidence. This factor favors AMSCOT.

    **f.  BNP's Intent Can Be Inferred from the Similarity of the Marks.**

The sixth factor looks at the intent of the Defendant in adopting the mark. If a defendant adopts a mark with the intention of deriving a benefit from the business reputation of another, confusing similarity can be inferred. See John H. Harland Co. v. Clark Checks, Inc., 711 F.2d 966, 977 (11th Cir. 1983). Such an inference of confusion likely applies in the present case.

AMSCOT's rights to the yellow and blue Rising Sun Logo are undisputed. It is also undisputed that BNP selected storefront awnings that were very similar to pre-existing AMSCOT awnings. BNP then adorned these awnings with its own yellow and blue rising sun logo and a BEEPERS N' PHONES mark that is written in the same script as the AMSCOT® mark. As if these coincidences were not enough, BNP then installed these awnings adjacent AMSCOT locations.

The only possible explanation for this string of coincidences is that BNP intended to capitalize on AMSCOT's trademark rights and on its multi-million dollar advertising campaign. As a result, this factor weighs in AMSCOT's favor and this Court should infer a confusing similarity between the subject marks.

### g. Actual Confusion Is Likely Under the Circumstances.

The final factor to be considered is whether there have been any instances of actual confusion. To date, AMSCOT has not uncovered any instances of actual confusion. However, this is not to say such confusion has not taken place. The walk-in nature of AMSCOT's business and the fact that many of its customers may, however wrongly, feel stigmatized by their self-banked status, means that instances of actual confusion may go undetected. Additionally, evidence of actual confusion is not a prerequisite to an infringement determination. See Frehling, 192 F.3d at 1340. This is because the touchstone of infringement is likelihood of confusion and not necessarily confusion. See id.

### B. AMSCOT Will Suffer Irreparable Injury if the Injunction Does Not Issue.

Having demonstrated a likelihood of confusion, the irreparable injury to AMSCOT can be presumed. See Levi Strauss, 51 F.3d at 986 ("trademark infringement by its very nature causes irreparable harm"); E. Remy Martin, 756 F.2d at 1530 ("[A] sufficiently strong showing of likelihood of confusion may by itself constitute a showing of. . . substantial threat of irreparable harm.") However, even absent this presumption, BNP's use of the Accused Logo adjacent AMSCOT's stores only serves to degrade the good will AMSCOT has generated in the mark over the past two years. If BNP is not enjoined, AMSCOT's rights in the Rising Sun Logo will be damaged beyond repair.

### C. The Balance of Hardships Tips in AMSCOT's Favor.

AMSCOT's loss of good will in the Rising Sun Logo outweighs any economic damage that may befall BNP by having to alter its signage. The number of stores involved also tips the scale in AMSCOT's favor. AMSCOT believes that there are only a few BNP locations employing the offending awnings. Thus, the effort to changes these awnings should be minimal. In sharp contrast, the failure of AMSCOT to secure an injunction would deal a severe blow to its multi-million dollar advertising campaign and the good will it has generated.

### D. The Public Interest Weighs in Favor of Issuing the Injunction.

A preliminary injunction would benefit the public by eliminating an egregious source of consumer confusion. The public interest weighs especially heavy in this case because the targets of the confusion are the self-banked. Some self-banked consumers may be poor, relatively unsophisticated consumers who are more susceptible to the confusion generated by BNP's marketing tactics. These consumers may also be less likely to complain about any confusion once it is discovered. In sum, the public interest will be served by preventing further instances of confusion in the marketplace. See Davidoff, 263 F.3d at 1304.

### E. Fed. R. Civ. P. 65(c)

AMSCOT is willing to post reasonable security in whatever amount the court deems reasonable pending a full resolution of this matter. In light of BNP's actions in this case, and the number of BNP stores involved, AMSCOT believes security in the amount of $10,000 is appropriate.

## IV. CONCLUSION

In light of the foregoing, AMSCOT respectfully requests that:

The individual Defendants and corporate Defendants and their officers, directors, agents, owners, employees, representatives and attorneys and all others acting under or in concert with them, be forthwith preliminarily enjoined from:

1) Infringing AMSCOT's rights in the Rising Sun Logo;

2) Using the Rising Sun Logo or any colorable imitation thereof upon any of BNP's signage, awnings, billboards, products, product containers, advertising or promotional materials, either in print or broadcast or electronic form or other forms, either separately or compositely with other words, symbols or devices, as a corporate or trading name or as a trademark, in connection with financial services, such as check cashing, deferred deposit transactions and money order services, or in conjunction with sales of cellular telephones or cellular telephone services, such as offering pre-paid cellular telephone calling cards or pre-paid cellular telephone minutes;

3) Imitating in any way, AMSCOT's Rising Sun Logo for the purpose of acquiring AMSCOT's trade and goodwill by imitation, fraud, mistake or deception; and

4) For such other relief as the Court may deem proper.

## 3.01(g) CERTIFICATE

In compliance with the Local Rule 3.01(g) counsel for Plaintiff conferred in good faith with the Defendant regarding the issues raised in this motion. No resolution could be reached and this motion is therefore submitted to the Court for resolution.

Respectfully submitted,

 s/Stefan V. Stein
Stefan V. Stein
Florida Bar No. 300527
Michael J. Colitz, III
Florida Bar No. 0164348
Holland & Knight LLP
100 N. Tampa Street
Suite 4100
Tampa, FL 33601-3644
Tel: 813/227-8500
Fax: 813/229-0134
Email: stefan.stein@hklaw.com
michael.colitz@hklaw.com
ATTORNEYS FOR PLAINTIFF
AMSCOT CORPORATION

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 8, 2004, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to the following: Sean K. McQuaid, Esquire, Aubrey O. Dicus, Esquire, Battaglia, Ross, Dicus & Wein, P.A., 980 Tyrone Boulevard, P.O. Box 41100, St. Petersburg, Florida 33743.

 s/Michael J. Colitz, III
Michael J. Colitz, III

# 2372750_v1